Frederick McLAUGHLIN

v.

VENORE TRANSPORTATION COMPANY.

Civ. A. No. 65–24.

United States District Court
D. Massachusetts.

Aug. 16, 1965.

Nathan Greenberg, Boston, Mass., for plaintiff.

Hiller Zobel and Robert Hallisey, Bingham, Dana & Gould, Boston, Mass., for defendant.

WYZANSKI, Chief Judge.

August 13, 1965 Nathan Greenberg, Esq. filed what he called "Plaintiff's Motion for Transfer of Case to Another Judge." Inasmuch as the full text "has to be seen to be believed", the best course will be to set it forth as the first appendix to this opinion. A summary might lead someone to suppose that I had been infected by the butter of the book reviewing counsel for defendant or by the pepper of the complaining counsel for plaintiff.

■ If the motion is offered in purported compliance with 28 U.S.C. § 144, it fails, for reasons elaborated in In re Union Leader Corp., 1st Cir., 292 F.2d 381. First, there is no affidavit whatsoever by client or counsel. Second, counsel whether deliberately or not, merely alleges that the judge "could not be expected to act * * * without bias or prejudice", but fails to certify that "to the best of his knowledge, information, and belief" there is good ground to support an affidavit that the judge "*has* a personal bias or prejudice." Third, the motion, tested by In re Union Leader Corp., 1st Cir., 292 F.2d 381 and other authorities set forth therein, is not "sufficient" in law to meet the statutory requirement.

Perhaps, however, the motion was not intended to comply with 28 U.S.C. § 144, inasmuch as the statute was not cited, and should, therefore, be examined at large. A broader consideration may dissipate any concern that plaintiff himself or his counsel might otherwise have as to the Judge's freedom from any disqualifying aspect.

No doubt, Mr. Greenberg would prefer that his client's case should be heard by another judge. In the more than 23 years that I have sat in this Court, I have had Mr. Greenberg before me in dozens of cases. Sometimes, to my profit, he has taught me the error of my rulings. Occasionally, I have erred in his favor, Greenberg v. Panama Transport Co., D. Mass. 185 F.Supp. 320, only to be later corrected, Panama Transport Co. v. Greenberg, 1st Cir., 290 F.2d 125. [See also the article critical of my opinion in that case written by the very Hiller B. Zobel involved in the present case;— "ATTORNEYS, SEAMEN, AND FEDERAL CHOICE OF LAW", Massachusetts Law Quarterly, October 1961, page 228] Not infrequently, Mr. Greenberg has been precluded by my rulings from tactics which I regarded as improper. I have never hesitated to prevent a lawyer from directly or indirectly drawing to the jury's attention inadmissible evidence, or artfully arguing to a jury that it should not hold against a client the lawyer's deliberate indulgence in breaches of canons of behavior and rules of law. When it has appeared to me that advocates have participated in the presentation of obviously false testimony, I have been quite willing to submit for the jury's ultimate consideration my own analysis of the evidence which has led me to that disagreeable conclusion. And when arguments presented to a jury have included points not supported by the record, or otherwise not relevant, or designed to create unwarranted prejudice, I have not sat in silence.

My practice in exercising that type of control Mr. Greenberg often has not welcomed. However, while he has occasionally remonstrated informally, he has in recent cases utilized not direct objections, but indirect attacks, of which the present motion seems on its face to be an example.

■ It would, of course, be fortunate if in each case all counsel and all parties were psychologically as well as legally content with the Judge assigned to try the litigation. But if one or more is discontent, the Judge is not on that ground alone entitled to disqualify himself. Unless disqualified, a Judge has a moral duty to sit even if it be unpleasant for him or others. A Judge

ought not to shift his work to his brethren. He ought to remember that *every* party has a right to insist on his obedience to the Court's rules; and that his unwarranted self-disqualification represents a breach of the rules which may be regarded as injurious to those who are content with the assignment of the case to him. Justice involves not only acting justly, but also appearing to act justly. It is part of appearing to do justly to adhere to the rules even when adherence excites objection by a person with an unwarranted sense of grievance.

■ The particular book review referred to in the motion was not solicited by the Judge, nor even known in any way to him before publication. The motion does not indicate the contrary. But it asserts that the author wrote "intending that the said book review would come to the attention of" the judge "and be viewed by him with favor." Even were this suggestion true (and it is a suggestion resting solely on plaintiff's unsworn belief, unsupported by any concrete detail), it would be of no legal or ethical significance.

It hardly lies in my mouth to assert that a reviewer might both in good faith and on the basis of a just appraisal of the book reach the very conclusions which were stated in the review. Others can weigh that element by comparing all other reviews which have so far appeared, of which a list appears in a second appendix to this opinion. Most of these were written by persons who have never appeared and are not likely ever to appear in the District Court for the District of Massachusetts. Moreover, some of these reviews, e. g. the one by Mr. Justice Whittemore of The Supreme Judicial Court of Massachusetts, might be thought at least as deserving as defendant's counsel's review of the stricture that "said book review in fact is directed more toward praise of the author than comments upon the book."

I make no hypocritical pretence that I do not like to read a favorable review.

I am frankly pleased when someone says I write better than would be expected of a lawyer. It gives me comfort to find that, at least to some readers, I seem able to have gained from, and yet not been seduced by, my Harvard teachers, or those under whom I served as an apprentice, or other giants of our calling. Nor am I sorry to experience the satisfactions which come to one whose ideas are noticed and even accepted as persuasive. Little men, like great ones, enjoy the responses they elicit from expression of their ideals. Modesty is a noble virtue; but humbug is not humility.

The most disarmingly honest statement I could make is that I ought to be grateful to Mr. Greenberg for his having advertised my book WHEREAS: A JUDGE'S PREMISES, even if he has gone about it in a most peculiar way. And, quixotically, perhaps I should encourage him to seek by mandamus the judgment of appellate tribunals thus achieving further publicity and even possibly larger royalty payments.

I have no doubt that the only one who has any reasonable ground for fearing adverse prejudice is Mr. Zobel, the book-reviewer who is defendant's lawyer. He may be alarmed lest, in an excess of caution, I should lean over backward against the interest of his clients. But my willingness to place this hidden risk in a public setting may serve as an indication of my capacity to digest praise no less than blame. Neither sugar nor salt will easily spoil my taste for the essence of justice.

One final word should be addressed over the heads of counsel to their clients. I have prepared this opinion as an explanation of my denial of the motion, not out of vanity, or a desire to show how a legal matador can pierce a charging bull. A judge who makes sport out of the serious business of parties is not true to the standards of his calling. Gravitas, not wit, is his most becoming mental attitude. What I seek to assure the liti-

gants is that I regard the motion and counsel who prepared it as merely misguided, not insulting or insincere. *Neither* side will suffer from the motion's want of subtlety or substance.

Motion denied.

## APPENDIX A

### UNITED STATES DISTRICT COURT

### DISTRICT OF MASSACHUSETTS

C.A.
NO. 65–24–W

FREDERICK McLAUGHLIN

vs.

VENORE TRANSPORTATION COMPANY

### PLAINTIFF'S MOTION FOR TRANSFER OF CASE TO ANOTHER JUDGE

The plaintiff moves that the Honorable Charles E. Wyzanski, Jr., disqualify himself from further participation in the above-entitled action and order that the case be transferred to another judge of this Honorable Court for all further proceedings.

As grounds for this motion, the plaintiff says:

1. Under the practice prevailing in the United States District Court for the District of Massachusetts, each case is assigned by lot to a single judge for all proceedings in the case, including pretrial proceedings and trial.

2. In accordance with said practice, this case was assigned to the Honorable Charles E. Wyzanski, Jr., when it was commenced in this Honorable Court.

3. The defendant is represented by the firm of Bingham, Dana & Gould, with which firm one Hiller B. Zobel, Esq. is associated. Said Hiller B. Zobel, Esq. has filed an appearance for the defendant herein.

4. In early 1965 a Boston publishing company published a book entitled "Whereas: A Judge's Premises", which book consists of collected writings of said Honorable Charles E. Wyzanski, Jr.

5. In the July 1965 issue of Boston, a magazine published by the Greater Boston Chamber of Commerce and widely distributed in and around Boston, Massachusetts, there appeared at pages 43–45 a review of said book, said book review purporting to be written by Hiller B. Zobel, "a Boston admiralty lawyer". So far as the plaintiff can determine, there is only one Hiller B. Zobel.

6. A true copy of said pages 43–45 including said book review is annexed hereto and marked "A".

7. The plaintiff believes that said book review was in fact written by said Hiller B. Zobel and that said Zobel, deliberately and consciously wrote said book review with the intent that it should be published in said Boston magazine, hoping and intending that said book review would come to the attention of the Honorable Charles E. Wyzanski, Jr. and be viewed by him with favor; and well knowing and intending that he, the said Zobel, would in the future be appearing as counsel before said judge in various cases.

8. Said book review includes various observations which are highly complimentary to said judge, including comparisons of his abilities to those of Lord Mansfield, Fiorello LaGuardia, Rogers Hornsby, Judge A. N. Hand of the Second Circuit and Toscanini, all of whom are or were well known as persons of uncommon skills and abilities in various fields of endeavor. Said book review also comments favorably upon the mental agility of said judge and describes him as learned, august, articulate, efficient, humble, and dedicated to public service, among other things. Said book review in fact is directed more toward praise of the author than comments upon the book.

9. It is obvious and unavoidable that said judge, even if possessing all of the qualities attributed to him by said Hiller B. Zobel, could not be expected to act fairly and without bias or prejudice, whether conscious or unconscious, in any case thereafter before him in which said Hiller B. Zobel or his law firm acts as counsel for one of the parties, and more particulary in this case.

10. In making this motion, the plaintiff takes no position as to the accuracy of the statements set forth in said book review.

By his attorney,

(s.) Nathan Greenberg

Nathan Greenberg, Esq.
One State Street
Boston, Massachusetts

CERTIFICATE OF SERVICE
Boston, Massachusetts
August 12, 1965

I, Nathan Greenberg, Esq., Attorney for the plaintiff in the above action hereby certify that I served a copy of the within Motion upon Hiller B. Zobel, Esq., One Federal Street, Boston, Massachusetts, attorney for the defendant, by mailing a copy thereof, postage prepaid, on the above date.

(s) Nathan Greenberg

Nathan Greenberg, Esq.

"A"

WHEREAS: *A Judge's Premises.* by Charles E. Wyzanski, Jr. 312 pp. Atlantic-Little, Brown. $6.75.

*Reviewed by Hiller B. Zobel* *

THIS WORTHWHILE AUTOANTHOLOGY starts off with what every lawyer in Boston will recognize as a large error. On the first page of his preface (therein referred to as *Avis au Lecteur*), Judge Wyzanski says: "I have not that charisma or magnetism or essence which makes the room catch fire when I spill over." Well, the room may not catch fire, but the poorly prepared lawyer or the artful witness surely catches hell.

For Charles Wyzanski, one of five United States District Judges for the District of Massachusetts, is in accomplishment and personality a combination of Lord Mansfield and Fiorello LaGuardia, with a touch of the versatility of Rogers Hornsby thrown in. His mind operates at such a pitch that one sometimes feels like beginning an argument before him with a stipulation that His Honor knows more than both counsel combined—a feeling, which persists after a reading of his learned and provocative book.

He has read immensely, thought profoundly, and written clearly, even eloquently, on the law, that "public face radiant with awareness that it is the reflection of men's deepest and noblest ideals." To Judge Wyzanski, law is "more than a historical review of the sediment deposited by the generations that have come before. The law is the instrument by which we keep the avenues open to the adventurous ideas that lie ahead."

And throughout the book, even in those sections not dealing with the subject directly, the reader becomes happily aware of the Judge's total commitment to the idea of the law's being, as he says, "a great public calling." For "what counts in the law are not technicalities, not mastery of routines, not mere craftsman-

---

* Hiller B. Zobel is a Boston admiralty lawyer and co-editor of the forthcoming Legal Papers of John Adams.

ship but a sense of justice. . . . We stand . . . entrusted with the task of shaping and transmitting the values of civilization." In fact, the theme of the book—if essays written at various times during thirty years can have a single theme—seems to be an urgent cry for young people, particularly young lawyers, to devote themselves to public service. As the Judge noted in a talk given when he himself was just past thirty, lawyers "reserve our greatest honors not for those among our brethren who earn the largest fees but for those among us who serve the public best."

Yet for all its cogency, the book is in two respects disappointing. First, the essays chosen do not demonstrate the development of the author's thought over the thirty year period they cover. Second, and more important, that self-denied "charisma or magnetism or essence" does not come through sufficiently. These may well be faults of the publisher, who selected the papers to be included. Indeed the Judge tells us that the selection was one with which he disagreed; typically, he does not reveal why the veto should have passed from his hands. It would be fatuous for any reviewer to press the point; still, it would seem that a piece like the Judge's indignant, anguished, and (it now appears) sadly prophetic memorandum written after the celebrated Worcester hearings in 1960 should have been included, not because of its non-topical content, but for its personification of the Judge's earlier expressed ideal of public service, and above all for its style.

This, is not to say that *Whereas* wholly fails to reveal the man who wrote the essays. There is plenty of *bios* with the bias, for, as the author notes, essays written about other lawyers and judges "so often in substance become revelations of the aspirations and accomplishments of the author, rather than of the subject."

The best illustration of this comes in an appreciation of Judge A. N. Hand of the United States Court of Appeals for the Second Circuit, for whom Judge Wyzanski once clerked: "He particularly enjoyed the zest and variety of the motion [i. e. non-trial] list, which he looked upon as a challenge to a judge's native capacity and balanced judgment." This surely is Wyzanski on Wyzanski, who runs his motion sessions the way Toscanini rehearsed the NBC Symphony. Here is the judicial master hand, learned, august, articulate, and death on slipshod thinking. Like the Lord Mansfield depicted for us by Lord Campbell in *Lives of the Chief Justices*, he is "firm, decided in his opinions, possessed of unexampled powers of despatch without ever appearing to be in a hurry, capable of explaining his judgments with admirable precision and perspicuity." This, for example, is the sum of Judge Wyzanski's disposition of a suggestion to consolidate for trial two superficially similar actions: "What the Clerk has put asunder, I have no desire to join."

Rather more significantly, the Judge is, for good cause shown, willing to change his mind. As he wrote in *Whereas,* "Humility is the noblest fruit of introspection. It establishes defenses against pride." The two essays on the Nuremberg War Crimes Trial illustrate this point neatly. The first (*Nuremberg —A Fair Trial? Dangererous Precedent*), written before the trial opened, seriously questioned the acceptability of the proceedings; the second (*Nuremberg in Retrospect*) candidly admitted that "many of these forebodings are shown to have been wide of the mark."

In the courtroom, Judge Wyzanski sometimes turns a nice compliment; occasionally he may turn it into something unexpected, a kind of praising with loud damns. Something of this approach can be glimpsed in *The First Hurrah*, an essay labeled "Notes for a Speech at St. Mark's School, Prize Day, 1964." After first congratulating the prizewinners and good-naturedly warning them ("So far as I have observed life, those whom the gods wish to disappoint, they first supremely endow with good fortune"), the Judge proceeded to leave the boys (and

their parents) with these perceptive remarks:

"From this room will go forth many boys who will become rich and powerful men. Not a few of you will have assets which reach seven figures. Not a few of you will be the presidents of large corporations. Not a few of you will own yachts and belong to the most fashionable country clubs and town clubs. Not a few of you will go on the opening night of the opera with wives bedecked with jewels. Not a few of you will have sons with allowances too large for their own good and substitute parents in the form of nurses and coaches. . . .

"For how many of you will an important element in your lives be your citizenship?

"Oh, in time of war you will no doubt be the first to form and participate in a Plattsburg Movement, or to join a flying escadrille. There is no question that if offered a post in the Cabinet of a President, or a place on the Supreme Court of the United States, or a brief tenure as Ambassador to the Court of St. James's, most of you will immediately see in such a possibility of glamour, glory, and grandeur.

"But what will you do in your own city or town? What will you do to put yourself in the mire of state politics, to run for the state legislature, to take the jibes and taunts of your friends and neighbors, and the heavy blows of your political opponents? . . .

"What are the prizes which you are going to esteem? Money in the bank, memberships in exclusive clubs, corporate offices, or the greatest office which is open to you—citizenship in the brotherhood of man?"

The thoughts expressed so strickingly at St. Mark's are central to the book and to Judge Wyzanski's thinking: dedication to, service for, and above all participation in the *res publica,* the commonwealth. These premises, as he calls them, are lucidly set forth in *Whereas,* a title which happily implies the appearance some day of a sequel—*Wherefore.*

APPENDIX B

Reviews, in alphabetical order of authors, of WHEREAS: A JUDGE'S PREMISES.

Library Journal 1965—anonymous review.

American Bar Association Journal 1965 —review by Lester E. Dennon.

Yale Law Journal—Fall 1965—review by John P. Frank.

New York Times—August 2, 1965—review by Eliot Fremont-Smith in "Books of The Times" titled "End Papers".

New York Law Journal—July 23, 1965— review by Mendes Hershman in "The Lawyers' Bookshelf".

New York Times, May 9, 1965—review by Alpheus Thomas Mason in "Book Review" titled "View From the Bench".

Boston Globe—May 20, 1965—review by A. E. Whittemore in "Book of the Day" titled "Wyzanski's Essays Reveal Personality".

Boston—July 1965—review by Hiller B. Zobel in "Books" titled "Oyez, Oyez".